STATE of Missouri, Respondent,

v.

Ken PELZ, Appellant.

No. WD 44473.

Missouri Court of Appeals,
Western District.

June 30, 1992.

Emmett Queener, Columbia, for appellant.

William L. Webster, Atty. Gen., Robert P. Sass, Asst. Atty. Gen., Jefferson City, for respondent.

Before BRECKENRIDGE, P.J., and SHANGLER and HANNA, JJ.

BRECKENRIDGE, Presiding Judge.

Kenneth Pelz appeals from his convictions for unlawful use of a weapon, § 571.-030, RSMo 1986,[1] and victim tampering, § 575.270, for which he was sentenced to five years imprisonment and six months in the county jail respectively, said sentences to run consecutively. Mr. Pelz raises four points on appeal, challenging the sufficiency of the evidence; the state's discussion of punishment in the final closing argument; error in the jury instructions; and the indefinite character of the verdict. The judgment is affirmed.

In determining the sufficiency of the evidence, all evidence supporting the verdict is regarded as true with contrary evidence discarded. *State v. Adkins,* 800 S.W.2d 28, 30 (Mo.App.1990). This court does not weigh the evidence to determine whether a defendant was guilty beyond a reasonable doubt; that is the function of the jury. *Id.* Applying these principles, this court finds that the evidence presented was sufficient to support a conviction for unlawful use of a weapon.

On May 21, 1990, a detective with the Boone County sheriff's office, Tom O'Sullivan, received a telephone call from Mr. Pelz. Mr. Pelz told Detective O'Sullivan that there was going to be a shoot-out involving him and his neighbors, the Bias family. Mr. Pelz appeared irritated because he felt that the Bias family was responsible for the death of some of his dogs.

On May 21, 1990, at approximately 3:30 p.m., Nancy Bias, the daughter of Gail and Linda Bias, answered a phone call from Mr. Pelz. He stated that he wanted to talk to her brother, Kenny. Kenny was already outside so Mr. Pelz went out to talk to him. Later, when the Bias family was watching television, two gunshots rang out. Nancy looked toward Mr. Pelz's house and saw him on his porch holding a gun. After hearing the shots Linda Bias dialed 911.

Mr. Pelz walked down to the Bias' driveway with his gun and a white bucket, then walked to a tree beside the road. He knelt and aimed the gun at the Bias house but did not shoot. Gail Bias went outside with his sons, Jason and Kenny. He told Mr. Pelz to put the gun down. Mr. Pelz told Gail Bias that he wanted to shoot him. Mr.

---

1. All statutory citations are to Revised Missouri Statutes 1986, unless otherwise stated.

Pelz told Jason and Kenny to go inside before they got shot too.

Mr. Pelz returned to his house. He emerged with another gun. He then sat in his driveway loading the gun with bullets from the white bucket. After loading the gun he walked into the Bias yard. Mr. Bias and his sons went outside again to talk with Mr. Pelz. He threatened to shoot. He pointed the gun at Gail Bias who took cover behind a brick wall. Ruth Stewart, another neighbor, saw Gail crouched behind the wall and saw Mr. Pelz pointing a gun at him. Mr. Pelz left pausing only to drop his pants to "moon" the Biases and Ms. Stewart.

Ken Kreigh of the Boone County Sheriff's office was dispatched to the scene. He placed Mr. Pelz under arrest, read him his *Miranda* rights and asked to look in Mr. Pelz's trailer. Mr. Pelz granted permission for the officers to enter the trailer. Detective Kreigh saw a Ruger .22 caliber rifle and seized it along with some ammunition. Mr. Pelz became argumentative and told Detective Kreigh to leave, that he would have to get a warrant. Detective Kreigh left. Mr. Pelz was taken to Boone County Corrections.

Detective Kreigh showed the Ruger .22 to the Biases who told him that this was not the rifle that they saw. Later that evening, Detective Kreigh returned with a search warrant and searched Mr. Pelz's trailer. He found a Ruger Mini–14 rifle and ammunition. The Biases identified the rifle as that which Mr. Pelz had pointed at them.

Mr. Pelz made bond. He began to threaten the Biases with harm if they would not drop their charges against him. On August 10, 1990, as Gail Bias was repairing his driveway Mr. Pelz aimed a .22 rifle with a scope at Mr. Bias and told him to drop the charges or one of the Bias kids would go down with him. He also aimed the gun at Linda Bias. Mr. Pelz fired two shots into the air.

Mr. Pelz was charged with two counts of unlawful use of a weapon and one count of tampering with a victim. The unlawful use of a weapon offenses were charged as Class D felonies with a maximum range of punishment of five years in prison and/or a $5,000.00 fine; tampering with a victim was charged as a Class C felony with a maximum range of seven years in prison and/or a $5,000.00 fine. Mr. Pelz was found guilty on one count of unlawful use of a weapon, the initial incident on May 21, 1990, and acquitted on the other count of unlawful use of a weapon on August 10, 1990. Additionally, he was found guilty on the tampering charge. In his challenge to the sufficiency of the evidence, he claims that the evidence was insufficient to find him guilty of unlawful use of a weapon.

■ The evidence as outlined above is sufficient to support Mr. Pelz's conviction. His review of the evidence in his brief, points up inconsistencies in the testimony favorable to his defense and ignores evidence supporting the verdict. His rendition of the evidence is violative of the controlling principle of review, wherein evidence is viewed in the light most favorable to the verdict. *State v. Guinan*, 665 S.W.2d 325, 329 (Mo. banc), *cert. denied*, 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984). His attempt to apply the doctrine of destructive contradiction, *State v. Gregory*, 339 Mo. 133, 96 S.W.2d 47 (1936), is also to no avail. The evidence given by the state's witnesses was not completely contradictory or, for that matter, uncorroborated. "Inconsistencies in a victim's story related to nonessential details do not destroy the submissibility of the case." *State v. Wicks*, 784 S.W.2d 223, 225 (Mo. App.1989). Point denied.

Mr. Pelz contends that the trial court abused its discretion in allowing the prosecutor, over objection, to argue punishment in the state's final closing argument as the prosecutor did not argue punishment in the initial portion of closing argument. Mr. Pelz claims that he could not respond to the state's argument, and he was thereby prejudiced.

■ The trial court has broad discretion in control of the closing argument. *State v. Keely*, 791 S.W.2d 864, 866 (Mo. App.1990). A prosecutor may not intro-

duce a line of argument in rebuttal argument that was not made in his opening. *State v. Murray,* 744 S.W.2d 762, 775 (Mo. banc), *cert. denied,* 488 U.S. 871, 109 S.Ct. 181, 102 L.Ed.2d 150 (1988).

■ During rebuttal, the prosecutor did, in fact, discuss the issue of what punishment Mr. Pelz deserved. Defense counsel objected. The trial court overruled the motion and the prosecutor continued to discuss punishment. Mr. Pelz cannot successfully show how he was prejudiced by the argument. His counsel obviously anticipated a discussion of punishment. In closing argument, defense counsel stated, "We're talking five years for unlawful use of a weapon and seven years for tampering with a victim. He's asking you for twelve years."

■ The prosecutor's argument as to punishment in the final closing argument is fair retaliation to defense counsel's remarks. "[A] prosecutor may properly retaliate to an issue raised by defense counsel's argument even if the prosecutor's argument is otherwise objectionable." *Taylor v. State,* 782 S.W.2d 741, 743 (Mo.App. 1989). In the instant case the prosecutor argued for the maximum punishment of seventeen years, correcting defense counsel's statement that the state was asking for twelve years.

Mr. Pelz's contentions in Points II and III of instructional error and error in the verdict director are not well founded. Mr. Pelz was charged with three separate offenses: (1) Count I, unlawful use of a weapon on May 21, 1990; (2) Count II, unlawful use of a weapon on August 10, 1990; and (3) Count III, tampering. Instruction No. 10, correctly submitted the tampering count. It read:

## INSTRUCTION NO. 10

As to Count III, if you find and believe from the evidence beyond a reasonable doubt:

First, that Gail Bias was the victim of the crime of unlawful use of a weapon on May 21, 1990, and

Second, that on or about August 10, 1990, in the County of Boone, State of Missouri, the defendant told Gail Bias in person that he (Pelz) would not go down alone, but would take one of the Bias family members to jail with him if Gail Bias did not straighten out this matter with the prosecutor or sheriff, and

Third, that by so doing, the defendant purposely attempted to prevent or dissuade Gail Bias from assisting in the prosecution of Kenneth E. Pelz for the crime of unlawful use of a weapon,

then you will find the defendant guilty under Count III of victim tampering.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

A person commits the crime of unlawful use of a weapon by knowingly exhibiting in the presence of one or more persons, a weapon readily capable of lethal use in an angry or threatening manner.

If you find the defendant guilty under Count III of victim tampering, you will assess and declare one of the following punishments:

1. Imprisonment for a term of years fixed by you, but not less than one year and not to exceed seven years.

2. Imprisonment in the county jail for a term fixed by you, but not to exceed one year.

3. Imprisonment for a term of years fixed by you, but not less than one year and not to exceed seven years and in addition a fine, the amount to be determined by the court.

4. Imprisonment in the county jail for a term fixed by you, but not to exceed one year and in addition a fine, the amount to be determined by the Court.

5. No imprisonment but a fine, in an amount to be determined by the Court.

The maximum fine which the Court may impose is $5,000.

Upon finding Mr. Pelz guilty the jury returned the pre-printed verdict form patterned after the appropriate instruction,

MAI–CR 304.40, writing in the punishment they assessed, so that the verdict form read:

As to Count III, we, the jury, find the defendant Kenneth E. Pelz guilty of victim tampering as submitted in Instruction No. 10.

We assess and declare the punishment for Unlawful Use of a Weapon at Imprisonment in the County Jail for a term of 6 months and a fine the amount to be determined by the court.

The verdict form purported to find Mr. Pelz guilty of victim tampering but punished him for unlawful use of a weapon. The verdict form, therefore, deviates from MAI–CR 304.40. However, "alleged errors in verdict forms are not treated as errors in instructions. Instructional deviation from MAI is presumed prejudicial, but parties complaining of deviation in verdict forms must show prejudice." *M.P. Indus., Inc. v. Axelrod*, 706 S.W.2d 589, 592 (Mo.App. 1986) (citing *Affiliated Foods, Inc. v. Strautman*, 656 S.W.2d 753, 761[5] (Mo. App.1983)).

The standard by which the prejudicial effect is measured "is whether the jury may have been influenced adversely by an erroneous instruction." *State v. Shatto*, 786 S.W.2d 232, 234 (Mo.App.1990). Instructions should not mislead jurors, nor should they be confusing, ambiguous or equivocal. *Id.*

No ambiguity appears in that portion of the verdict finding Mr. Pelz guilty on Count III victim tampering. However, ambiguity appears in the sentence recommended by the jury assessing and declaring punishment for unlawful use of a weapon. The trial court recognized the error but took no steps to correct the verdict or resolve the inconsistency, although the law places upon the trial court the obligation of examining a verdict for defects and seeing that it is in the proper form. *State v. Dorsey*, 706 S.W.2d 478, 480 (Mo.App.1986).

The error in the verdict was brought to the attention of and acknowledged by the trial court before the jury was dismissed. Defense counsel stood silent during the court's perusal of the error and the prosecutor's positive acceptance of the verdict. This silence, operating as an acceptance of the verdict, waived any further review much as in the rule operating in civil cases, "that a claim that a verdict is inconsistent to the point of being self-destructive must be presented to the trial court before the jury is discharged." *Douglass v. Safire*, 712 S.W.2d 373, 374 (Mo. banc 1986). The court in *State v. McMikle*, 673 S.W.2d 791, 798 (Mo.App. 1984), implied that such a rule is proper in criminal cases although the question was ultimately decided on other grounds.

The facts of the case at bar particularly compel the application of such rule to criminal cases. Here the trial court acknowledged the error in open court and defense counsel took the opportunity to physically examine the form of the verdict. He then stood silent rather than voice an objection to the verdict prior to the discharge of the jury. Such inaction precludes Mr. Pelz from subsequently objecting to the form of the verdict.

The judgment is affirmed.

All concur.