**STATE of Missouri, Appellant,**

v.

**Stephen N. ZIMMERMAN, Respondent.**

No. WD 52632.

Missouri Court of Appeals,
Western District.

April 1, 1997.

Jeremiah W. (Jay) Nixon, Atty. Gen., Becky Owenson Kilpatrick, Asst. Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for Appellant.

Scott K. Friedrich, Harrisonville, for Respondent.

Before BRECKENRIDGE, P.J., and SMART and EDWIN H. SMITH, JJ.

EDWIN H. SMITH, Judge.

Respondent, Stephen N. Zimmerman, was charged in the Circuit Court of Cass County in Count I with the class B felony of assault in the first degree, § 565.050,[1] and in Count II with the felony of armed criminal action, § 571.015. The charges were tried to a jury with the jury being instructed down on Count I as to assault in the second degree, § 565.060, and assault in the third degree, § 565.070. Initially, the trial court determined that the jury had returned verdicts of not guilty as to both counts and entered judgment accordingly. After discharging the jury, the trial court discovered that the jury had completed and returned with the other instructions Verdict Form G, in which the jury found respondent guilty on Count I of third degree assault. Nonetheless, over the State's objection, the trial court entered a judgment of acquittal as to Count I, as well as to Count II.

The State appeals, pursuant to § 547.200.2, from the judgment of acquittal as to Count I, claiming that the trial court, as a matter of law, erred in entering its judgment. In support of its claim, the State argues that the jury returned inconsistent verdicts of not guilty and guilty as to Count I, and thus, the trial court could not enter a judgment on either verdict without resolving the inconsistency with input from the jury through further deliberations, which did not occur. In its brief, the State initially claimed that the not guilty verdict as to Count I specifically pertained to first degree assault, but not third degree assault, and thus, the two verdicts were not inconsistent and requested that we reverse and remand directing the trial court to enter judgment on the guilty verdict as to assault in the third degree. However, in its oral argument, the State conceded that the verdicts were in fact inconsistent, in that the not guilty verdict pertained to Count I generally, not first degree assault specifically, and that neither verdict could be accepted by the court as the true verdict of the jury. Thus, the State now

---

**1.** All statutory references are to RSMo 1994, unless otherwise indicated.

requests that we reverse and remand for a new trial on Count I. Because we agree that the verdicts as to Count I are inconsistent and cannot be reconciled without further deliberations by the jury and that double jeopardy is not implicated by a retrial of Count I, we reverse and remand for a new trial as to Count I only.

## Facts

Because the State's appeal only deals with procedural aspects of the case, we limit our facts to the pertinent procedural background. The respondent was charged in Count I with assault in the first degree and in Count II with armed criminal action. The three-day jury trial began March 5, 1996. After the presentation of evidence and arguments, the trial court submitted its instructions to the jury on Count I and II, including the lesser included offenses on Count I, assault in the second degree, § 565.060, and assault in the third degree, § 565.070.

When the jury returned with its verdicts, it gave the bailiff the jury instructions, including its verdict forms. The top two sheets in the pile of instructions were the verdict form for Count I, Verdict Form B, and the verdict form for Count II, Verdict Form D. Verdict Form B stated: "As to Count I, we, the jury, find the defendant Stephen N. Zimmerman not guilty. /s/ 'Don Caldwell' Foreperson." L.F. 37. Thus, the language of Verdict Form B declared respondent not guilty of any assault, in any degree, first, second or third. In Verdict Form D, the jury found respondent not guilty of armed criminal action. The trial court read these verdict forms in open court and asked the foreperson if they were the jury's verdicts, to which he responded affirmatively. No one requested that the jury be polled, and the jury was discharged.

After discharging the jury, the trial court, when going over the jury instructions, found another completed verdict form, Verdict Form G, for assault in the third degree. This verdict form provided:

"As to Count I, we, the jury, find the defendant Stephen N. Zimmerman guilty of assault in the third degree as a Class A

misdemeanor as submitted in instruction No.15.

We access [sic] and declare the punishment for assault in the third degree at guilty [sic] # 2.

/s/ 'Don Caldwell'

Foreperson.

Select one of the following paragraphs and write it in the above blank. If your selection is paragraph 2, insert the time period.

. . .

2. Imprisonment in the county jail for a term of 4 days and in addition a fine, the amount to be determined by the Court. . . ."

L.F. 42. The trial court stated on the record that it had discovered Verdict Form G, finding respondent guilty of assault in the third degree, but that it had already accepted Verdict Form B, finding respondent not guilty of assault in any degree. The State was allowed to make a statement on the record, in which it noted its belief that the jury intended to find respondent guilty of third degree assault based on Verdict Form G. Regardless, the trial court refused to accept the third degree assault guilty verdict and entered a judgment of acquittal as to Counts I and II. The State appeals from this judgment pursuant to § 547.200.2.

## I.

The State claims that the trial court erred as a matter of law in accepting the not guilty verdict as to Count I without resolving through further deliberations the inconsistency between the two verdict forms returned by the jury. Because the trial court failed to resolve the inconsistency through further deliberations, the State argues that there was no final verdict as to Count I and that a new trial is necessary. The question then for us to decide is whether the trial court could, as a matter of law, enter a judgment of acquittal as to Count I.

As part of its instructions to the jury, the trial court gave mandatory instruction MAI–CR 304.12, designated in this case as Instruction No. 7. This instruction stated: "The defendant is charged with a separate offense in each of two counts submitted to you.

Each must be considered separately. You should return a separate verdict for each count and *you can return only one verdict for each count.*" L.F. 24 (emphasis added). Despite this instruction, the jury proceeded to return, with the other jury instructions, completed Verdict Form B, not guilty as to Count I, and completed Verdict Form G, guilty of assault in the third degree.

Respondent contends that the jury never intended to "return" the guilty verdict as to Count I. The respondent maintains that the jury did not intend to return Verdict Form G, guilty as to misdemeanor assault, as a verdict of the jury because: 1) it positioned Verdict Form G at the bottom of the pile of returned jury instructions; 2) the foreperson responded affirmatively and members of the jury nodded affirmatively when he was asked if Verdict Forms B and D were the jury's verdicts; and, 3) no member of the jury spoke up and asked the trial court why it had not read Verdict Form G. We will address the issue of whether the jury "returned" inconsistent verdicts of not guilty and guilty as to Count I.

■■■ MAI–CR 302.05 directs the proper manner in which a jury is to "return" its verdict. This instruction, here Instruction No. 5, provided in pertinent part: "Although the verdict must be unanimous, the verdict should be signed by your foreperson alone. When you have concluded your deliberations, you will complete the applicable form to which you unanimously agree and return it with all unused forms and the written instructions of the Court." L.F. 22. This instruction makes it clear that if the jury unanimously agrees to a verdict, then the foreperson is to sign the verdict form and return it to the court, which is exactly what occurred here as to Verdict Form B and Verdict Form G. Under MAI–CR 302.05, the fact that the foreperson here signed and returned to the trial court both Verdict Form B and Verdict Form G would make them verdicts of the jury, although inconsistent.

In support of his contention that the jury did not "return" inconsistent verdicts, respondent argues that Verdict Form G was not returned as a verdict of the jury, but was simply an earlier verdict, which was later rejected by the jury. In this respect, respondent argues that because the jury put Verdict Forms B and D at the top of the pile of returned instructions and Verdict Form G at the bottom, it could be inferred that the jury did not intend Verdict Form G to be considered its verdict as to Count I. We disagree.

■■■ Respondent cites no authority nor can we find any to support the proposition that the position of a completed verdict form in the returned jury instructions is indicative or determinative of the jury's intent to return a verdict. In order to "return" a verdict, the jury was not required to place the appropriate verdict form in any specific location in the stack of returned instructions. Instruction No. 5 simply directed the jury to "return [the applicable verdict form] *with* all unused forms and the written instructions of the Court." (emphasis added). Engaging in respondent's form of analysis, if Verdict Form G was an earlier verdict of the jury that was later rejected, why did the foreperson not indicate on the form that it was rejected and was not to be considered by the court? Who knows? It just proves that it is unreasonable to infer anything from the location of the verdict form in the returned jury instructions. We refuse to attach any significance to the location of a verdict form in the returned instructions. If location is to have significance, the jury would have to be instructed as to this fact. We leave it to the Criminal Instructions Committee to determine whether MAI–CR 302.05 should be amended to include a directive specifying where the "returned" verdicts should be located in the returned instructions.

In summary on this issue, we find that the jury did, in fact, return inconsistent verdicts of not guilty and guilty as to Count I. The question then is what is the proper procedure for the trial court to employ when confronted with inconsistent jury verdicts.

■■■ A "trial court has a duty to examine the verdict[s] returned by the jury for defects, inconsistencies and ambiguities." *State v. Dorsey,* 706 S.W.2d 478, 480 (Mo. App.1986); *see also, State v. Pelz,* 845 S.W.2d 561, 565 (Mo.App.1992). "[W]hen a jury re-

turns a verdict in improper form, it is the duty of the trial court to refuse to accept the same and require further deliberations until a verdict in proper form is returned." *State v. Lashley*, 667 S.W.2d 712, 715 (Mo. banc 1984), *cert. denied*, 469 U.S. 873, 105 S.Ct. 229, 83 L.Ed.2d 158 (1984). The Missouri Supreme Court in *State v. Peters*, 855 S.W.2d 345, 348–49 (Mo. banc 1993), *cert. denied*, 510 U.S. 1075, 114 S.Ct. 887, 127 L.Ed.2d 81 (1994), held that when confronted with two inconsistent verdicts, the trial court must reject them and send them back for further deliberations to resolve the inconsistency. Thus, the trial court here had a duty prior to discharge of the jury to inspect the returned instructions. Had it done so, it would have discovered that the jury had returned two inconsistent verdicts as to Count I, and accordingly, should have refused to accept them and sent the jurors back for further deliberations.

In *Peters*, the jury returned a verdict of not guilty as to the underlying felony of assault, but guilty as to armed criminal action. Because a defendant cannot be found guilty of armed criminal action if not found guilty as to the underlying felony, the trial court in *Peters* declared the verdicts to be inconsistent and ordered the jury to resume deliberations. The Missouri Supreme Court held that the trial court had acted properly. In holding as it did, the Court stated, "The critical issue, of course, is whether defendant has in fact been acquitted. . . ." *Id.* at 349. "The only sure way to determine which verdict is accurate is to allow the jurors to resolve the inconsistency." *Id.*

We recognize that the inconsistency in *Peters* was different from the inconsistency here. In *Peters*, there were inconsistent verdicts between two counts, while here there are two inconsistent verdicts as to the same count. However, the lesson of *Peters* remains the same. If the jury returns inconsistent verdicts, the trial court has a duty to resolve the inconsistency by instructing the jury to deliberate further. For the trial court to attempt to resolve the inconsistency without directly addressing it with the jury through further deliberations, as the trial court attempted to do here, relegates the

court to trying to determine the intent of the jury as to its verdicts based upon inferences, conjecture and speculation. In *Peters*, the Supreme Court expressly rejected this method of dealing with inconsistent verdicts, opting instead for the more reliable procedure of further jury deliberations. We are bound by the holding in *Peters*.

Respondent argues that further jury deliberations were not necessary in this case to allow the trial court to enter its judgment of acquittal as to Count I in that the inconsistency was resolved by the trial court asking the foreperson if Verdict Forms B and D were the jury's verdicts. The foreperson responded affirmatively and several members of the jury allegedly nodded their heads affirmatively when the trial court asked this question. First, we find that the trial court made no finding on the record as to jurors' nodding their heads; thus, such evidence is outside the record and cannot be considered by us. Next, respondent appears to be making the argument that by asking the foreperson if the verdicts as read were in fact its verdicts, that this was tantamount to polling the jury and because the answer to the question was yes, that the verdicts are therefore final. We disagree.

■ Rule 29.01(d) provides that in a situation of confusion, a party may have the jurors polled individually about their verdict. *State v. Harding*, 734 S.W.2d 871, 875 (Mo. App.1987). However, the trial court is not required to poll in every case. It is up to trial counsel to make the request. If a party fails to request that the jury be polled, it waives this right. *Id.* We find what happened here did not constitute polling of the jury in that individual jurors were not polled; only the foreperson was asked the question. Further, and more importantly, at the time the trial court asked the question of the foreperson, neither it nor counsel for the parties knew about the inconsistent verdicts as to Count I. In a polling situation, the trial court is to ask of the jurors if the returned verdict is his or her verdict. Here, because there were two returned inconsistent verdicts as to Count I, the trial court could not simply ask if Verdict Form B was the jury's verdict; it would have to ask which verdict

was its verdict as to Count I. The trial court, being unaware of the inconsistent verdicts, did not directly address both verdicts with the jury foreperson or the jurors. Thus, there was no opportunity for each juror to tell the court whether he or she agreed with the verdict in Verdict Form B or Verdict Form G. We are confident that had the trial court asked the jury which Count I verdict was its true verdict, the confusion could have been cleared up. However, because there was no polling of the jury as to which of the inconsistent verdicts it agreed, the inconsistent verdicts remain.

Respondent also argues that the jury must have intended to acquit him of Count I because no member of the jury asked the trial court why it had not read its Verdict Form G, convicting him of assault in the third degree. Respondent is arguing in effect that the failure to speak up was tantamount to the jurors agreeing with the not guilty verdict as to Count I—"implied polling" if you will. Again, as we found *supra*, the only acceptable manner in which to poll the jury here was to ask each juror which verdict was his or her verdict, which did not occur. Further, juries quite commonly are intimidated by the trial process and are hesitant to speak on their own volition. The members of this jury may have assumed that because the trial court had all the verdict forms in front of it, it knew that the jury was acquitting respondent on all but the misdemeanor assault charge, and thus, it was not necessary for the trial court to read Verdict Form G, and they did not want to question the trial court's judgment. In any event, based on the procedure approved in *Peters* and absent a duty to respond or being directly questioned by the trial court as to which verdict was intended, we attach no significance to the jury's silence as to the trial court's failure to read Verdict Form G in determining which verdict it intended as to Count I.

Because the inconsistent verdicts in *Peters* were discovered and properly dealt with by the trial court prior to the discharge of the jury, the Court in *Peters* was not confronted with the issue that confronts us—how do you resolve two inconsistent verdicts if the jury has already been discharged? We believe the answer can be found in *Peters*—that without further deliberations, there is no final verdict of the jury. Thus, because there was not a final verdict for the trial court to accept as to Count I, we conclude the only alternative is to reverse and remand for a new trial as to Count I.

■ Respondent contends that sending the case back for a new trial would result in double jeopardy. We disagree. Double jeopardy only attaches when there is a final verdict of acquittal. *Id.* at 349–50. It does not prevent a new trial in the case of a mistrial consented to or requested by the defense, *State v. Clover*, 924 S.W.2d 853, 856 (Mo. banc 1996); *State v. Tolliver*, 839 S.W.2d 296, 299 (Mo. banc 1992), or when a mistrial is declared because of a hung jury. *State v. Johnson*, 598 S.W.2d 123, 125 (Mo. banc 1980), *cert. denied*, 449 U.S. 1067, 101 S.Ct. 795, 66 L.Ed.2d 611 (1980); *U.S. v. Sanford*, 429 U.S. 14, 97 S.Ct. 20, 50 L.Ed.2d 17 (1976). Where there is no final verdict of acquittal, double jeopardy does not prevent the case from being retried. Here, the jury "acquitted" respondent as to Count I without any reference to a specific crime, and then found him guilty of misdemeanor assault under Count I. Because these two verdicts cannot legally and logically exist at once, we find that there was no final verdict of acquittal, which the trial court could accept as to Count I, and double jeopardy would not be implicated by remanding Count I back for a new trial.

■ Although the State does not contest the judgment of acquittal as to Count II, armed criminal action, because we believe the issue is likely to be raised on the retrial of Count I, we will address the jury's verdict of not guilty as to Count II. As to the not guilty verdict on Count II, we find there was no inconsistency on its face or in conjunction with either verdict the jury attempted to return on Count I. Whether the jury on Count I intended to acquit respondent on the underlying felony or convict him of assault in the third degree, a Class A misdemeanor, an acquittal on Count II, armed criminal action, would have been consistent with either such verdict. Thus, the acquittal on Count II, armed criminal action, was not inconsistent

on its face or in conjunction with any of the possible verdicts on Count I, and therefore is a final verdict of acquittal and would result in double jeopardy if retried. *Peters,* 855 S.W.2d at 349–50.

## Conclusion

The trial court's judgment of acquittal on Count I is reversed and remanded for a new trial. Its judgment of acquittal on Count II is affirmed.

All concur.