STATE of Missouri, Respondent,

v.

Antonio FLEMONS, Appellant.

No. WD 63354.

Missouri Court of Appeals,
Western District.

Sept. 28, 2004.

John Robert Cullom, Kansas City, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Deborah Daniels, Adriane Crouse, Office of Attorney General, Jefferson City, for Respondent.

PAUL M. SPINDEN, Judge.

Antonio Flemons appeals the circuit court's judgment convicting him of unlawful use of a weapon and failure to appear. Flemons asserts that the circuit court erred in accepting the jury's verdict of guilty on the unlawful use of a weapon count because the verdict was inconsistent with the jury's not guilty verdict on the count involving possession of a controlled substance with the intent to distribute. He also contends that insufficient evidence existed for the jury to find him guilty beyond a reasonable doubt of failing to appear for a trial setting. We affirm the circuit court's judgment in part and reverse it in part.

On April 27, 2002, Corporal Brian Hagerty of the State Highway Patrol was patrolling Interstate 70 near Route H in Lafayette County when he saw a vehicle driven by Flemons attempt to pass a tractor-trailer. As Flemons' vehicle entered the passing lane, it crossed the fog line and was about a foot from the median's edge. Flemons' vehicle remained in the passing lane for more than a mile before returning to the right lane. During that mile, the car crossed the fog line two more times. Hagerty turned on his vehicle's emergency lights and attempted to stop Flemons. In response to the emergency lights, Flemons sped up and began "fidgeting" over the center console area of his vehicle. Flemons continued driving for a quarter to a half-mile before pulling onto the highway's shoulder.

After Flemons had stopped, Hagerty walked to Flemons' vehicle on the driver's side, and his partner, Trooper Bill Oliver, went to the passenger's side. Hagerty asked Flemons for his driving license, which Flemons gave him along with a card identifying him as a "preferred customer" of a motel chain. Flemons told Hagerty that the car was a rental car, and he showed Hagerty the rental agreement. As Hagerty talked with Flemons, Hagerty saw Oliver signal him with his hand. Hagerty asked Flemons to move the vehicle because it was not parked in a safe place. As Hagerty and Oliver returned to their patrol car to move their car, too, Oliver told Hagerty that he had smelled the odor of burnt marijuana.

After Flemons had moved his car, Hagerty and Oliver again walked to the vehicle and asked him to get out of it. Hagerty described Flemons as having wide mood swings—from obvious anxiety to extreme nonchalance. Hagerty asked Flemons what his travel destination was, and Flemons told him that he was going to Jefferson City to visit his parents. Hagerty asked him whether or not he had any luggage, and Flemons told him that he had a gun in front seat's armrest.

Hagerty found a fully loaded 40–caliber gun from the center console. As he unloaded the gun, he noted that its magazine capacity was for more than 10 rounds. According to Hagerty, civilians could not purchase guns with capacities of more than 10 rounds. Flemons informed Hagerty that he had a permit for the gun, and Hagerty's check of the gun's serial number indicated that it had not been reported stolen.

During the course of his conversation with Hagerty, Flemons made several calls on his cellular telephone. At one point, Hagerty had to stop his investigation to allow Flemons to complete a telephone conversation. According to Hagerty, Flemons' body language indicated "excessive relaxation." Flemons went from a sitting position on the hood of the patrol car to a lounging position.

Flemons refused Hagerty's request for permission to search the car. When Hagerty explained that he was going to have a dog sniff the car's exterior, Flemons telephoned someone on his cell phone and said, "They're searching my fucking car." Hagerty asked Flemons to wait with Oliver at the rear of the patrol car while he retrieved a dog. The dog alerted Hagerty at several locations on the car, indicating the presence of drugs. Hagerty searched the trunk and found a red duffel bag that contained multiple plastic bags of marijua-

na. The marijuana weighed 5950.94 grams, or a little more than 13 pounds. Hagerty also found a partially burnt marijuana cigarette in the center console ashtray.

Hagerty told Oliver to arrest Flemons. In securing Flemons for the arrest, Oliver felt a bulge in Flemons' pant's pocket. Oliver reached inside Flemons' pocket and removed a cigarette rolling machine, rolling papers, three marijuana cigarettes, and loose marijuana. The officers took Flemons to the Lafayette County Jail.

The next day, Deputy Mark Good of the Lafayette County Sheriff's Department was working at the jail when a bondsman completed paperwork for Flemons' posting post bond. Good had Flemons read the bond form before signing it. It said, "The defendant is required to ... attend all court hearings as set by this court or any court to which this case is transferred or appealed." The form also said that, if Flemons failed to abide by this condition, "a warrant will be issued for his arrest and ... a charge of failure to appear may be filed." Good witnessed Flemons' signing the form.

On December 6, 2002, Flemons appeared in circuit court with his attorney concerning a motion to suppress evidence. The docket entry indicates that the circuit court set the case for a jury trial on December 18, 2002, at 8:30 A.M. On December 18, 2002, Flemons did not appear in court. The prosecuting attorney made an oral motion for bond revocation, which the circuit court sustained, and the circuit court issued a warrant for Flemons' arrest. Authorities arrested Flemons on April 8, 2003, in St. Louis County.

On August 13, 2003, a jury found Flemons guilty of unlawful use of a weapon and failure to appear and not guilty of possession of a controlled substance with intent

to distribute. The circuit court sentenced Flemons as a prior offender to consecutive terms of four years of imprisonment. Flemons appeals.

In his first point, Flemons contends that the circuit court erred in denying his motions for judgment of acquittal and in accepting the jury's verdict of guilty on the unlawful use of a weapon count because the verdict was inconsistent with the jury's not guilty verdict on the count involving possession of a controlled substance with the intent to distribute. Flemons, however, did not preserve the claim of inconsistent verdicts for our review. If a defendant claims that a verdict is inconsistent to the point of being self-destructive, he must present that claim to the circuit court before the jury is discharged; if he does not, he waives the claim. *State v. Pelz*, 845 S.W.2d 561, 565 (Mo.App.1992). Because Flemons did not object to the verdict, we may review his claim for plain error only.

Rule 30.20 authorizes us to review, in our discretion, "plain errors affecting substantial rights ... when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Under Rule 30.20, plain error review involves a two-step process. *State v. Dudley*, 51 S.W.3d 44, 53 (Mo.App.2001). First, we determine whether or not the claimed error "facially establishes substantial grounds for believing that 'manifest injustice or miscarriage of justice has resulted[.]' " *State v. Brown*, 902 S.W.2d 278, 284 (Mo. banc), *cert. denied*, 516 U.S. 1031, 116 S.Ct. 679, 133 L.Ed.2d 527 (1995). We must determine "whether, on the face of the claim, plain error has, in fact, occurred." *Dudley*, 51 S.W.3d at 53. Errors are plain if they are evident, obvious, and clear. *State v. Hawthorne*, 74 S.W.3d 826, 829 (Mo.App.2002). In the absence of such error, we should decline to exercise

our discretion to review the claimed error under Rule 30.20. If we find plain error on the face of the claim, we may proceed, at our discretion, to the second step to consider whether or not a miscarriage of justice or manifest injustice will occur if the error is left uncorrected. *Dudley*, 51 S.W.3d at 53.

From the face of this record, we discern plain error. Flemons facially establishes substantial grounds for believing that he has been the victim of manifest injustice.

The jury in this case found Flemons guilty of unlawful use of a weapon but not guilty of possession of a controlled substance with the intent to distribute. The jury instruction for the unlawful use of a weapon charge, however, required the jury to find Flemons guilty of possession of a controlled substance with the intent to distribute to find him guilty of unlawful use of a weapon. The instruction provided:

As to Count II, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about April 27, 2002, in the County of Lafayette, State of Missouri, the defendant carried upon or about his person a firearm, and

Second, that defendant carried the firearm so that it was concealed from ordinary observation, and

Third, that the firearm was readily capable of lethal use, and

Fourth, that defendant acted knowingly with respect to the facts and conduct submitted in this instruction, and

Fifth, that defendant was not at that time traveling in a continuous journey peaceably through this state,

then you will find defendant guilty under Count II of unlawful use of a weapon.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions,

you must find the defendant not guilty of that offense.

. . .

As used in this instruction, an individual is not "traveling peaceably" if he is committing the offense of possession of more than five grams of marijuana with the intent to distribute, deliver, or sell.

As used in this instruction, an individual is committing the offense of possession of more than five grams of marijuana with the intent to distribute, deliver, or sell if he possesses more than 5 grams of marijuana, knows or is aware of the presence and nature of the marijuana, and intends to distribute, deliver, or sell the marijuana to another person or other persons.

On its face, the jury's verdict of guilty verdict for unlawful use of a weapon is inconsistent with its verdict of not guilty for marijuana possession.

 The state asserts, however, that an inconsistent verdict among several charges does not require reversing the judgment if sufficient evidence exists to support the finding of guilt on each charge. *State v. Clemons*, 643 S.W.2d 803, 805 (Mo. banc 1983). Indeed, when a defendant is tried on a multiple count charge involving crimes with different elements, the jury's verdict does not have to be logically consistent. *State v. O'Dell*, 684 S.W.2d 453, 465 (Mo.App.1984). If the offense for which the defendant was acquitted requires proof of a unique element, distinct from the elements of the crime for which he was found guilty, the verdicts cannot be inconsistent.

*State v. Avila*, 866 S.W.2d 500, 501 (Mo. App.1993).

The problem for the state is that the circuit court instructed the jury to find Flemons guilty of unlawful use of a weapon if he was not traveling in a continuous journey peaceably through this state. The instruction further said, "*As used in this instruction*, an individual is not 'traveling peaceably' if he is committing the offense of possession of more than five grams of marijuana with the intent to distribute, deliver, or sell."[1] Based on this instruction, the jury could not have acquitted Flemons on the charge of possessing a controlled substance with an intent to distribute but still have found him guilty of unlawful use of a weapon.[2] The unlawful use of a weapon charge and Flemons' not traveling peaceably were dependent on Flemons' being found guilty of possession of marijuana with the intent to distribute.

The jury noted the problem. During its deliberations, it asked the circuit court in a note, "Are we to stay until we reach a verdict? Are all counts tied together? If we find not guilty on Count I[,] can we find guilty on Count II[?] Inst[ruction] 8 seems to tie Count I & II together." In response to the jury's question, the circuit court replied, "Please continue to deliberate until further notification by this Court. You shall be guided by the instructions previously given to you."

After the circuit court sent its reply, the prosecuting attorney asked it "to take a look at the instructions on inconsistent verdicts to see . . . [whether it] appl[ies] in

1. We added the emphasis.

2. To the extent that the state argues that "the unique drafting of the jury instruction did not preclude a finding of guilt on the charge of unlawful use of a weapon," such argument is disingenuous. The instruction, which was submitted by the state, made conviction of possession of marijuana with intent to distribute a condition precedent to a conviction for unlawful use of a weapon. Hence, we need not consider whether Flemons was not traveling peaceably in other ways.

this case[.]" The following exchange ensued:

THE COURT: I think I would think it would if they come back one way on two and the opposite on one. If they come back guilty, they cannot come back on—

[PROSECUTING ATTORNEY]: That's what I feel.

[FLEMONS' ATTORNEY]: There's another theory that could justify one.

THE COURT: They could just find that he was not peaceably. They could do that.

[PROSECUTING ATTORNEY]: Not the way we've instructed it.

[FLEMONS' ATTORNEY]: They could find that he was not guilty on one but guilty on two.

[PROSECUTING ATTORNEY]: If not peaceably. They have to find him guilty if they were to find not peaceably.

THE COURT: There's other ways to not be peaceably. I'll have to look at the instructions.

After further deliberations, the jury returned its verdicts, which the circuit court accepted.

■■■ The circuit court has an obligation to examine the verdicts returned by the jury for defects, ambiguities, and inconsistencies. *State v. Hibler*, 21 S.W.3d 87, 95 (Mo.App.2000). When a jury attempts to return verdicts that are inconsistent, the circuit court should reject the jury's verdict and send it back to the jury for further deliberation to resolve the inconsistency. *State v. Peters*, 855 S.W.2d 345, 348 (Mo. banc 1993), *cert. denied*, 510 U.S. 1075, 114 S.Ct. 887, 127 L.Ed.2d 81

(1994). "For the [circuit] court to attempt to resolve the inconsistency without directly addressing it with the jury through further deliberations ... relegates the court to trying to determine the intent of the jury as to its verdicts based upon inferences, conjecture and speculation." *State v. Zimmerman*, 941 S.W.2d 821, 825 (Mo.App.1997). The circuit court in this case, however, did not reject the jury's verdicts or require the jury to deliberate further. The circuit court accepted the verdicts and discharged the jury.

■■■ A verdict is binding when the circuit court accepts it and discharges the jury. *Peters*, 855 S.W.2d at 348. Because the circuit court accepted the jury's not guilty verdict on the charge of possession of marijuana with intent to distribute and discharged the jury, that verdict is binding and jeopardy attaches. Flemons cannot be retried for this offense. *Cf. Zimmerman*, 941 S.W.2d at 826 (because no final verdict was accepted by the court in regard to the count charged, jeopardy did not attach). The unlawful use of a weapon charge, as instructed, was dependent on a guilty finding on the possession of marijuana with intent to distribute. Hence, the jury's verdict of not guilty on the possession of marijuana with intent to distribute charge should have disposed of the unlawful use of a weapon charge, too. Because a miscarriage of justice would occur if this error were left uncorrected, we reverse the circuit court's judgment regarding the unlawful use of a weapon charge and order that Flemons be discharged.[3]

■■■ Flemons also asserts that insufficient evidence existed for the jury to find him guilty beyond a reasonable doubt

---

3. Because this point is dispositive, we need not address Flemons' other contentions on appeal that the circuit court erred in denying his motions for acquittal because insufficient evidence existed to establish his guilt beyond

a reasonable doubt that he unlawfully used a weapon and that the circuit court erred in overruling his motion to suppress the marijuana, drug paraphernalia, and gun because of the lack of probable cause.

of failing to appear for a trial setting. He asserts that the state failed to prove that his failure to appear was willful or intentional and failed to establish that he had been adequately warned or notified to appear. In considering Flemons' point, we must consider as true the evidence most favorable to the state, and we must disregard evidence to the contrary. *State v. Gilbert*, 103 S.W.3d 743, 749 (Mo. banc 2003). We do not re-weigh the evidence or determine witnesses' credibility. *Rousan v. State*, 48 S.W.3d 576, 595 (Mo. banc 2001). We are obligated to reject the challenge if we conclude that the state presented enough evidence to permit a juror to find, beyond a reasonable doubt, that the defendant was guilty. *Gilbert*, 103 S.W.3d at 749.

"Failure to appear is a specific intent crime." *State v. Carey*, 914 S.W.2d 406, 408 (Mo.App.1996). To establish that a defendant had the requisite intent, the state must show through either direct or circumstantial evidence that the defendant purposely failed to appear. *State v. McCoy*, 90 S.W.3d 503, 505–06 (Mo.App. 2002). "The [s]tate does not make a case merely by showing that the [d]efendant was not present in court when required to appear." *Id.* at 505.

Sufficient evidence existed for a reasonable trier of fact to conclude that Flemons had the requisite intent not to appear in court on the day scheduled. A docket entry established Flemons was present in court on December 6, 2002, and, on that date, his case was set for a jury trial on December 18, 2002. A reasonable juror could infer that, by his presence in open court, Flemons was made aware that he was to appear for trial on December 18, 2002. *Cf. State v. Williams*, 85 S.W.3d 79, 82 (Mo.App.2002) (no direct evidence that defendant was informed of the trial date, only that his counsel was informed of the

date). Additionally, strong circumstantial evidence existed establishing that Flemons intended to avoid trial as he was arrested in St. Louis County nearly four months after he was supposed to appear in court. *Id.* at 81–82.

We, therefore, affirm the circuit court's judgment convicting Flemons of failure to appear, but we reverse the circuit court's judgment convicting him of unlawful use of a weapon.

EDWIN H. SMITH, Chief Judge, and ROBERT G. ULRICH, Judge, concur.