STATE of Missouri, Respondent,

v.

Freddie Leonard OWENS, Appellant.

No. WD 68830.

Missouri Court of Appeals,
Western District.

Dec. 16, 2008.

Craig Allan Johnston, Columbia, MO., for appellant.

Shaun Mackelprang, and Jayne T. Woods, Jefferson City, MO., for respondent.

Before THOMAS H. NEWTON, C.J., and VICTOR C. HOWARD and ALOK AHUJA, JJ.

ALOK AHUJA, Judge.

Appellant Freddie Owens appeals his conviction after a jury trial for attempted victim tampering pursuant to § 575.270.2,[1] on the basis that the jury's verdict was unsupported by the evidence and patently inconsistent. We reverse, and vacate Owens' conviction.

## I. Factual Background

In January 2007, Owens was living with his girlfriend at the time, C.H.,[2] in Boone County. C.H.'s sixteen-year-old daughter, M.D., lived in the same home. During the early morning of January 11, 2007, M.D. called the police and told them that Owens had sexually assaulted her. When subsequently interviewed, M.D. stated that she was awakened by Owens touching her between her legs underneath her clothing. M.D. also claimed that Owens had asked

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

2. M.D. and her mother are identified by initials pursuant to § 566.226 RSMo Cum.Supp. 2007.

her to perform oral sex on him, and had offered to perform oral sex on her.

Owens was arrested based on M.D.'s accusations. In late January 2007, while incarcerated in the Boone County jail awaiting trial, Owens made several telephone calls to C.H. Each of the conversations was recorded, a fact of which both Owens and C.H. were aware. During the calls Owens attempted to persuade C.H. to have M.D. sign a notarized statement indicating that she would not participate in Owens' prosecution, and "stop[ ] these whole proceedings." Owens told C.H. that "[y]ou can make [M.D.] go do it," and asked her to "force [M.D.] to do that." Owens told C.H. that, if M.D. signed a letter stating that she did not wish to press any charges, the State would drop the matter. He stated that "the only thing that can save me . . . is a letter from her, or her going down to the DA's office and dropping charges." During the conversations Owens neither proclaimed his innocence, nor admitted his guilt, of the underlying offense. There was no evidence that either Owens or C.H. directly contacted M.D. to attempt to persuade her to drop the charges.

On February 5, 2007, following these recorded conversations between Owens and her mother, M.D. provided a one-sentence, notarized letter to the Boone County prosecutor's office, stating that she "would like to drop the charges filed against [Owens] on January 11, 2007." Prior to trial, M.D. told both the prosecutor's office and her aunt that the sexual assault had not occurred, and that she had made the story up.

As reflected in a First Amended Information filed on the first day of his trial, Owens was ultimately charged with three counts: Count I, statutory sodomy in the second degree, § 566.064; Count II, victim tampering, § 575.270.2; and Count III, attempted statutory sodomy in the second degree, §§ 564.011 and 566.064. (The attempted statutory sodomy count was based on the allegation that Owens "asked M.D. to perform oral sex on him.")

At trial, M.D. testified that Owens had not sexually assaulted her, and that she had made up the allegations due to a dispute with her mother. M.D. denied that either her mother or Owens had talked to her about dropping the charges against Owens; instead, M.D. insisted that it was her decision to inform the prosecutor's office that she had lied in making her accusations.

At the close of the State's evidence, Owens' trial counsel filed a motion for acquittal on all counts. In response, the trial court directed a verdict of not guilty on Count III, the attempted statutory sodomy charge. Prior to submission to the jury, the trial court granted the prosecution's unopposed oral motion to amend Count II from victim tampering to attempted victim tampering. The amendment was apparently triggered by the argument of Owens' counsel that there was insufficient evidence of the completed crime of victim tampering, because there was no evidence that either Owens or C.H. had actually spoken with M.D. to attempt to persuade her to drop the charges against Owens.[3] Notably, under § 575.270.3, the range of punishment for attempted victim tampering is identical to that for the completed offense.

---

3. Although the transcript reflects that the trial court granted the State's motion to amend, and Count II was actually submitted to the jury as an attempt offense, no amended information appears in the record on appeal, nor is any motion to amend or amended information noted on the circuit court's docket.

The jury acquitted Owens of Count I, the charge of statutory sodomy in the second degree; however, the jury found Owens guilty of Count II, attempted victim tampering. The trial court accepted the verdict and dismissed the jury. Owens made no objection based on any purported inconsistency in the verdict prior to the jury's discharge. The court sentenced Owens to five years incarceration in the Missouri Department of Corrections without possibility of parole.

## II. Analysis

In his sole Point Relied On, Owens argues that his conviction for attempted victim tampering should be vacated because the jury "found Appellant not guilty of sodomy, and Appellant's victim tampering conviction is dependent upon the jury finding that M.D. was the victim of statutory sodomy." We agree.

### A. Standard of Review

Generally, "[i]f a defendant claims that a verdict is inconsistent to the point of being self-destructive, he must present that claim to the circuit court before the jury is discharged; if he does not, he waives the claim." *State v. Flemons*, 144 S.W.3d 877, 881 (Mo.App. W.D.2004). Because Owens did not object to the jury's verdict in a timely fashion, we may review his claim for plain error only. *Id.*

Rule 30.20[4] authorizes this Court to review "plain errors affecting substantial rights ... when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." "Review of plain error under Rule 30.20 involves a two-step process." *State v. Lewis*, 243 S.W.3d 523, 525 (Mo.App. W.D.2008). "First, we must determine if the claim on its face estab-

lishes substantial grounds to find that manifest injustice or miscarriage of justice has resulted." *Id.* "Errors are plain if they are evident, obvious, and clear." *State v. Brink*, 218 S.W.3d 440, 448 (Mo. App.2006). "In the absence of such error, we should decline to exercise our discretion to review the claimed error under Rule 30.20." *Id.* "If we find plain error on the face of the claim, we may proceed, at our discretion, to the second step to consider whether or not a miscarriage of justice or manifest injustice will occur if the error is left uncorrected." *Id.*

In connection with our plain error analysis, we note that "[a] 'trial court has a duty to examine the verdict returned by the jury for defects, inconsistencies and ambiguities.'" *State v. Zimmerman*, 941 S.W.2d 821, 824 (Mo.App. W.D.1997) (citation omitted). "'The law is clear that when a jury returns a verdict in improper form [there, as here, based on an inconsistency in verdicts on separate counts], it is the *duty* of the trial court to refuse to accept the same and require further deliberations until a verdict in proper form is returned.'" *State v. Peters*, 855 S.W.2d 345, 348 (Mo. banc 1993) (citation omitted). "For the court to attempt to resolve this inconsistency without directly addressing it with the jury through further deliberations ... relegates the court to trying to determine the intent of the jury as to its verdicts based upon inferences, conjecture and speculation." *Zimmerman*, 941 S.W.2d at 825.

### B. Interpretation of § 575.270.2

Section 575.270.2, the statute under which Owens was convicted, provides:

---

4. Unless otherwise indicated, rule citations are to the Missouri Rules of Criminal Procedure (2008).

A person commits the crime of "victim tampering" if, with purpose to do so, he prevents or dissuades or attempts to prevent or dissuade *any person who has been a victim of any crime* or a person who is acting on behalf of any such victim from:

(1) Making any report of such victimization to any peace officer, or state, local or federal law enforcement officer or prosecuting agency or to any judge;

(2) Causing a complaint, indictment or information to be sought and prosecuted or assisting in the prosecution thereof;

(3) Arresting or causing or seeking the arrest of any person in connection with such victimization.

(Emphasis added.)

Section 575.270.2 makes express and unambiguous that one of the elements of the crime of victim tampering is that the individual prevented or dissuaded be "a[ ] person who has been a victim of any crime." "It is up to the legislature, not this court, to determine the elements of a crime." *State v. Porter*, 241 S.W.3d 385, 397 (Mo. App. W.D.2007). "[I]t is presumed, of course, 'that the legislature did not insert idle verbiage or superfluous language in a statute.'" *Turner v. State*, 245 S.W.3d 826, 828 (Mo. banc 2008)(quoting *Civil Serv. Comm'n of St. Louis v. Bd. of Aldermen*, 92 S.W.3d 785, 788 (Mo. banc 2003)).

■ Giving the language in § 575.270.2 its plain and ordinary meaning, a jury must find that the object of the tampering is "a victim of any crime" before an accused can be found guilty under the statute. *State v. Granger*, 966 S.W.2d 27 (Mo. App. E.D.1998), supports this conclusion. In *Granger*, the defendant was found guilty, after a jury trial, of assault in the first degree, armed criminal action, victim tampering, aggravated stalking, resisting arrest, and two counts of burglary in the

first degree. *Id.* at 29. On appeal, the Eastern District concluded that the evidence was insufficient to support the defendant's conviction for one of the two counts of first degree burglary. *Id.* at 29–30. Without a lengthy analysis, *Granger* concluded that reversal of the burglary conviction likewise required reversal of the victim tampering conviction:

As discussed, there was insufficient evidence to find defendant guilty of burglary in the first degree relating to the June 22, 1995 incident. [In the victim tampering instruction,] [t]he jury was only instructed as to finding that Laura Morrow was the victim of burglary in the first degree relating to the June 22, 1995 incident. Defendant's conviction for the class C felony of victim tampering is reversed.

*Id.* at 30.

*State v. Dooley*, 851 S.W.2d 683 (Mo. App. E.D.1993), is to like effect. *Dooley* holds that a defendant need not be found guilty of *every* predicate offense which could render the object of the tampering the "victim of any crime"; nevertheless, it plainly assumes that the jury must find that the target of the persuasion was the victim of *some* underlying criminal offense:

The [victim-tampering] instruction . . . required the jury to find Mona L. Keith was the victim of assault, burglary, unlawful use of a weapon, *or* kidnapping, and that defendant attempted to prevent or persuade [sic] her from prosecuting. The instruction follows the language of § 575.270.2 RSMo.1986. Defendant argues that because he was acquitted of the crime of unlawful use of a weapon, Mona L. Keith could not be a victim of that offense and, therefore, one of the disjunctive submissions is without evidentiary support.

This argument is defective given the statute's language that "any person who has been a victim of any crime" is a victim. Section 575.270.2. *We decline to narrow the class of "victims" by holding that defendant must be guilty of all underlying charges before he can be found guilty of victim tampering.* Defendant's fourth point is denied.

*Id.* at 687 (emphasis added).[5]

Our conclusion that the State must prove that the target of tampering was in fact the victim of a crime is further bolstered by the Missouri Approved Instruction for submission of victim tampering.[6] MAI–CR3d 329.87 reads:

329.87 VICTIM TAMPERING

(As to Count _____, if) (If) you find and believe from the evidence beyond a reasonable doubt:

**First, that [*name of victim* ] was the victim of the crime of [*name of crime* ] (that occurred on or about [*date* ]) (that was charged as a felony on or about [*date* ]), and**

(Second, that [*name of person* ] was acting on behalf of [*name of victim* ], and)

(Second) (Third), that (on) (on or about) [*date* ], in the (City) (County) of _____, State of Missouri, the defendant [*Briefly describe what defendant said or did.*], and

(Third) (Fourth), that (by)(in) so doing, the defendant purposely prevented or dissuaded [*name of victim or person in paragraph Second* ] from [MAI–CR3d then lists various acts of assistance in criminal enforcement],

then you will find the defendant guilty (under Count _____) of victim tampering.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

**[*Insert a definition of the crime of which the person was a victim.*]**

*Id.* (boldface emphasis added). The effect of MAI–CR3d 329.87 is that, if the jury has a reasonable doubt that the complaining witness "was the victim of the crime" identified (and defined) in the instruction, it must acquit the defendant of victim tampering, since the jury is expressly admonished that, "unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense." [7]

---

**5.** In response to Owens' post-trial motion for judgment of acquittal, the State argued that

[T]here is case law directly on point, as to situations where the underlying crime in the victim tampering, where a jury finds a person not guilty of that underlying crime, but still finds them guilty of the victim tampering, there are many, you know, *too many to even cite for you here today*, as to that is permissible; that is not an inconsistent verdict.

Suffice it to say that the State has not cited to this Court a single case, from Missouri or elsewhere, upholding a victim tampering conviction in these circumstances.

**6.** Prior cases have recognized that, while in no sense binding, approved instructions may be helpful in interpreting criminal statutes. *See, e.g., State v. Smith,* 972 S.W.2d 476, 479 (Mo.App.W.D.1998); *see also State v. McCann,* 952 S.W.2d 392, 394 (Mo.App. S.D. 1997).

**7.** This admonition implements the principle that "[t]he Due Process Clause requires the State to prove every element of the crime charged beyond a reasonable doubt." *State v. Coulter,* 255 S.W.3d 552, 562 (Mo.App. W.D.2008)(citing *In Re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)). "It is elemental that the State has the burden of proving each and every element of a criminal offense, and that *the State's failure to meet that burden mandates the reversal of any conviction obtained under those*

The information which charged Owens reflects that the State was fully aware that it would be required to prove that M.D. was in fact the victim of the crime of statutory sodomy in order to secure Owens' conviction for victim tampering. The relevant paragraph of the First Amended Information, filed on the day Owens' trial commenced, alleges that:

> In violation of Section 575.270, RSMo, [Owens] committed the class C felony of victim tampering, punishable upon conviction under Sections 558.011 and 560.011, RSMo, in that on or between January 12, 2007, and April 1, 2007, in the County of Boone, State of Missouri, the defendant acting in concert with another, purposeful[l]y prevented or diss[u]aded M.D. *a victim of the crime of statutory sodomy that was charged as a felony on or about the 19th day of January, 2007,* from assisting in the prosecution of Freddie Owens *for the crime of statutory sodomy.*

(Emphasis added.) [8]

Finally, we find it significant that § 575.270 defines not only the crime of victim tampering (in § 575.270.2), but also the offense of *witness* tampering (in § 575.270.1). This latter subsection proscribes efforts "to induce a witness or a prospective witness to disobey a subpoena or other legal process, or to absent himself or avoid subpoena or other legal process, or to withhold evidence, information or documents, or to testify falsely." The statute only prohibits such efforts, however, if they are accomplished by specific means: threats to cause harm or causing harm to persons or property; force or deception; or offers to confer direct or indirect benefits on the witness. *See* § 575.270.1(1) to (4). While this statute does not require proof that an underlying offense actually occurred (and in that respect is *broader* than the victim tampering proscription), it also significantly *narrows* the scope of prohibited conduct by criminalizing only certain means of persuasion.[9]

## C. Inconsistency of the Jury's Verdicts.

 Here, Owens was convicted of attempted victim tampering, but was acquitted of the underlying crime of statutory sodomy. However, as discussed above, in order to convict him of victim tampering the jury needed to find that M.D. was in fact victimized by statutory sodomy. We conclude that the jury's acquittal of Owens on Count I, but its conviction on Count II, were patently inconsistent and require the vacation of Owens' victim tampering conviction.

 As a general proposition, inconsistencies between verdicts on multiple counts in a criminal prosecution are not grounds for rejecting the individual verdicts; rather, the sufficiency of the evidence on each count is considered independently of the others.

> An inconsistent verdict among several charges does not require a reversal provided there is sufficient evidence to support the jury's finding of guilt [on each count considered independently].... "Juries frequently convict on some

---

circumstances." *State v. Todd,* 805 S.W.2d 204, 205 (Mo.App. W.D.1991) (emphasis added).

8. As noted above, an unopposed oral motion to amend the charge to attempted victim tampering was granted during trial. No record of this amendment is contained in the circuit court's docket entries, and no further amended information was apparently ever filed.

9. We note that the term "victim" is defined in § 575.010(11). Neither party cites to this definition, or suggests that it should influence our reading of § 575.270.2 in the circumstances of this case.

counts and acquit on others not because they are unconvinced of guilt but simply because of compassion and compromise." *State v. Clemons,* 643 S.W.2d 803, 805–06 (Mo. banc 1983) (quoting *State v. Urhahn,* 621 S.W.2d 928, 934 (Mo.App. E.D.1981)). Under this general principle, the sufficiency of the evidence on "[e]ach count is to be reviewed separately." *State v. Rice,* 937 S.W.2d 296, 299 (Mo.App. E.D.1996). "[W]hen a defendant is tried on a multiple count charge involving crimes with different elements, the jury's verdict does not have to be logically consistent." *State v. Flemons,* 144 S.W.3d 877, 882 (Mo.App. W.D.2004). " 'However much the jury's conclusion may tax the legally trained's penchant for consistency, the law is clear that inconsistent verdicts among the varied charges of a multi-count indictment are not self-vitiating.' " *State v. Cross,* 699 S.W.2d 51, 54 (Mo.App. E.D.1985) (citation omitted).

This principle is subject to an important exception, however: where a finding of guilt on one count *depends on* the jury's verdict on another count, acquittal of the predicate crime precludes conviction of the dependent offense. Thus, in *Flemons,* we concluded that a jury's "guilty verdict for unlawful use of a weapon [was facially] inconsistent with its verdict of not guilty for marijuana possession." 144 S.W.3d at 882. In *Flemons* the jury was instructed that the defendant could only be found guilty of unlawful use of a weapon "if he was not traveling in a continuous journey peaceably through this state." *Id.* The jury was further instructed that "an individual is not 'traveling peaceably' if he is committing the offense of possession of more than five grams of marijuana with the intent to distribute, deliver, or sell." *Id.* This Court concluded that the instructions rendered Flemons' guilt for unlawful use of a weapon contingent on his guilt for possession of marijuana with intent to dis-

tribute, and that acquittal on the marijuana possession charge necessitated reversal of his conviction for the weapons offense:

> Based on this instruction, the jury could not have acquitted Flemons on the charge of possessing a controlled substance with an intent to distribute but still have found him guilty of unlawful use of a weapon. The unlawful use of a weapon charge and Flemons' not traveling peaceably were dependent on Flemons' being found guilty of possession of marijuana with the intent to distribute.

*Id.* (footnote omitted); *see also id.* at 882 n. 2 ("The instruction, which was submitted by the state, made conviction of possession of marijuana with intent to distribute a condition precedent to a conviction for unlawful use of a weapon.").

Similarly, in *State v. Staten,* 478 S.W.2d 265 (Mo.1972), the Supreme Court held that a jury's acquittal of the defendant on a second-degree burglary charge required reversal of his conviction for stealing in connection with the burglary, reasoning that

> [b]urglary is a constituent element of a stealing charge under the statute and a jury verdict such as this is not merely inconsistent. It shows conclusively that the jury has failed to find a constituent element of the offense and therefore it cannot stand.

*id.* at 266; *see also State v. Peters,* 855 S.W.2d 345, 347–48 (Mo. banc 1993) (verdicts inconsistent "because if the defendant was not guilty of assault, he cannot be guilty of armed criminal action based on assault"; trial court properly refused verdicts and ordered jury to deliberate further to resolve inconsistency); *State v. Weems,* 840 S.W.2d 222, 228 (Mo. banc 1992) (reversal of murder conviction requires reversal of armed criminal action conviction, "because the armed criminal action conviction was dependent upon a finding by the jury that, in accord with its

instructions, Mr. Weems committed murder in the first degree"); *State v. Young*, 42 S.W.3d 729, 733–34 (Mo.App. W.D.2001) (distinguishing *Staten* and *Peters* because, in those cases, the acquitted offense was "a constituent element" of the convicted offense).[10]

The State emphasizes that here, the instruction for attempted victim tampering did not explicitly identify statutory sodomy as the predicate offense or contain a definition of statutory sodomy. The instruction did, however, instruct the jury that the offense of "victim tampering" required that the defendant "prevents or dissuades any person *who has been the victim of any crime* from" assisting in a prosecution.[11] The only crime of which M.D. could have been the victim that was posited by the charging instrument, the evidence, the arguments, and the jury instructions was statutory sodomy in the second degree. The instruction also required the jury to find that Owens asked C.H. "to speak with [M.D.] about *signing an affidavit of non-*

*prosecution.*" Based on the evidence, the "affidavit of non-prosecution" could only relate to the statutory sodomy charge Owens was then facing, and which was the only predicate criminal offense submitted to the jury for its resolution. (Owens was charged with *attempted* statutory sodomy, based on the invitation to engage in oral sex, only at a later date; in any event, the court directed a judgment of acquittal on that offense.) Construing the instructions as a whole, *see, e.g., State v. Storey*, 40 S.W.3d 898, 912 (Mo. banc 2001), it is plain that the State's prosecution of Owens for victim tampering depended on a finding that M.D. was a victim of statutory sodomy in the second degree.[12]

The jury was instructed that it should convict Owens of statutory sodomy if it found: (1) that he touched M.D.'s vagina with his hand; (2) "that such conduct constituted deviate sexual intercourse," which was defined to mean the touching of certain body parts "for the purpose of arousing or gratifying the sexual desire of any

---

**10.** For the reasons stated in the text, cases where verdicts were merely *logically* inconsistent with one another are irrelevant, because here we find that conviction of Owens for victim tampering *depended on* a finding that the underlying crime of statutory sodomy had occurred. *See, e.g., State v. Davis*, 903 S.W.2d 930, 935 (Mo.App. W.D.1995)(rejecting defendant's argument that the jury's verdict was patently inconsistent because, according to defendant, it was "simply inconceivable that, having found that appellant did *not* touch C.B.'s vagina with his hand (Count I) and did *not* have intercourse with her (Count II), any rational trier of fact could have found that he placed her hand upon his penis with the intent to arouse sexual desire"); *State v. Cross*, 699 S.W.2d 51, 53–54 (Mo.App. E.D.1985) (no fatal inconsistency where jury convicted of one count of sodomy but acquitted of another, and both alleged offenses involved the same victim and occurred during the same interaction in a parked car, with only a brief gap between them).

**11.** As in *Flemons*, 144 S.W.3d at 882 n. 2, we find "disingenuous" the State's argument

that the jury was not required to find that M.D. "ha[d] been the victim of any crime." Although (as in *Flemons*) the definition of "victim tampering" appeared in a paragraph below the enumeration of the elements of attempted victim tampering, the jury was instructed that it had to find that Owens had taken "a substantial step toward the commission of the offense of victim tampering of [M.D.]," "for the purpose of committing such victim tampering."

**12.** We recognize that neither the statute, nor the attempted victim tampering instruction given here, required the jury to find that Owens had committed the statutory sodomy of which M.D. was a victim, and we can conceive of situations in which a defendant could be convicted of tampering with the victim of a crime committed by others, or by unknown perpetrators. Here, however, there was no basis in the evidence to find that the alleged offense was committed by anyone other than Owens, if it was committed at all.

person"; (3) that M.D. was less than 17 years old; and (4) that Owens was more than 21 years old. By acquitting on this charge, the jury necessarily found that the State had failed to prove at least one of these elements beyond a reasonable doubt: that Owens did not in fact touch M.D.'s vagina; that he did not do so to arouse or gratify sexual desire; or (less plausibly) that M.D.'s or Owens' ages did not meet the statutory definition. *State v. Clark*, 197 S.W.3d 598, 601 (Mo. banc 2006) ("An acquittal can only be an acknowledgment that the government failed to prove an essential element of the offense beyond a reasonable doubt."). The jury's conclusion that sufficient evidence was not presented on any of these elements would necessarily mean that the State had failed to prove that the crime of statutory sodomy, as defined, had occurred, and that M.D. had been the victim of it. *See State v. Bell*, 62 S.W.3d 84, 93 n. 2 (Mo.App. W.D.2001) (reference in armed criminal action instruction to underlying felony of robbery necessarily required jury to find all elements of robbery).[13]

Thus, as in *Flemons, Staten*, and the other cases cited above, Owens' conviction for attempted victim tampering depended upon the jury's finding him guilty of statutory sodomy, and the acquittal on the statutory sodomy count is patently inconsistent with the guilty verdict on Count II.

## D. The Fact that Owens Was Charged with *Attempted* Victim Tampering Does not Alter the Outcome.

The State argues that, because it charged Owens only with the offense of *attempted* victim tampering, it did not have to prove that M.D. was *actually* the victim of statutory sodomy. The State quotes § 564.011.2, which provides that

> [i]t is no defense to a prosecution [for an attempt offense] ... that the offense attempted was, under the actual attendant circumstances, factually or legally impossible of commission, if such offense could have been committed had the attendant circumstances been as the actor believed them to be.

But the State did not argue this case as one of factual or legal impossibility, or request that the court give the approved modification of the attempt instruction applicable where impossibility is in issue. *See* MAI–CR3d 304.06, and Note on Use 5. Moreover, any claim of factual or legal impossibility is simply incoherent here: in order for that doctrine to be applicable, the jury would have to have found that M.D. was *not*, in fact, the victim of statutory sodomy, but that Owens *mistakenly believed that she was*. We cannot sustain Owens' conviction based on this strained hypothetical. *Cf. State v. Young*, 139 S.W.3d 194, 197–98 (Mo.App. W.D.2004)(upholding defendant's conviction of attempted second degree statutory rape because defendant "completed every act that he could" in light of the fact that defendant solicited sex via email from a fictional fourteen year old who was actually a Sheriff, and subsequently traveled at a prearranged time to where the minor purported to live).

---

**13.** We note that § 575.270.2 only proscribes interference with the actions of a victim "*of any crime.*" A common meaning of "*crime*" is

> an act or the commission of an act that is forbidden or the omission of a duty that is commanded by a public law of a sovereign state to the injury of the public welfare and that makes the offender liable to punishment by that law in a proceeding brought against him by the state by indictment, information, complaint, or similar criminal proceeding.

WEBSTER'S THIRD NEW INT'L DICTIONARY 536 (unabridged ed. 1981).

■ Ultimately, the State is not allowed to pick and choose which elements of a crime it intends to prove at trial simply because a crime is charged as an attempt. *See State v. Doolittle,* 896 S.W.2d 27, 28–29 (Mo. banc 1995)(reversing defendant's conviction of attempted first-degree robbery because the jury did not find that the defendant had used, or threatened to use, a "dangerous instrument"). The Comment to the 1973 proposed Criminal Code explains that, even after the rejection of a factual or legal impossibility defense in § 564.011.2,

[i]t is still necessary that the result desired or intended be an offense. The actor will not be guilty of an attempt, even though he firmly believes that his goal is criminal, unless it actually is criminal.

In this case, the State failed to prove that the goal of Owens' conduct was actually criminal, *i.e.,* that the person he had "attempt[ed] to prevent or dissuade" from participating in his prosecution *"ha[d] been a victim of any crime."* The fact that Owens was charged with attempted victim tampering, rather than with the completed offense, cannot save his conviction.

**E. Appropriate Relief.**

■ Because the trial court accepted the jury's verdict acquitting Owens of statutory sodomy, he cannot now be retried on that offense, or on the attempted victim tampering charge which depended on that offense. As this Court explained in *Flemons*:

A verdict is binding when the circuit court accepts it and discharges the jury. Because the circuit court accepted the jury's not guilty verdict on the charge of possession of marijuana with intent to distribute and discharged the jury, that verdict is binding and jeopardy attaches. Flemons cannot be retried for this offense. The unlawful use of a weapon charge, as instructed, was dependent on a guilty finding on the possession of marijuana with intent to distribute. Hence, the jury's verdict of not guilty on the possession of marijuana with intent to distribute charge should have disposed of the unlawful use of a weapon charge, too.

144 S.W.3d at 883 (citations omitted). The same result obtains here.[14]

The prosecution, and the trial court, were not without a remedy following the jury's return of the inconsistent verdicts on the statutory sodomy and attempted victim tampering charges. Before accepting the verdicts, the trial court could, and should, have resubmitted both counts to the jury, and asked them to deliberate further to resolve the inconsistency in the verdicts they initially returned. *See State v. Peters,* 855 S.W.2d 345, 348–49 (Mo. banc 1993) (affirming trial court's adoption of this course and finding no violation of defendant's rights under the Double Jeopardy Clause); *State v. Bell,* 62 S.W.3d 84, 93 (Mo.App. W.D.2001); MAI–CR3d

---

**14.** We are fully aware that, although the plain error rule generally seeks to put a defendant in the same position he would have been in if he had made a timely objection in the trial court, in the current situation Owens is arguably being put in a *better* position than if he had noted the inconsistency in the verdicts before the jury was discharged, when the trial court could have remedied the situation. This is, however, the course adopted in *Flemons,* and we accordingly follow it here. Given that Owens' acquittal of second-degree statutory sodomy is now final and unimpeachable, it would constitute a manifest injustice to affirm an attempted victim-tampering conviction based on an underlying crime which the jury found the State had not proven.

312.06 (approved instruction for use in this situation).

### III. Conclusion

For all of the foregoing reasons, Owens' conviction for attempted victim tampering cannot survive his acquittal for statutory sodomy in the second degree. We there-fore reverse the circuit court's judgment, and vacate Owens' conviction.

All concur.