

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | WD78521 |
| | ) | |
| CHARLES EDWARD BALDWIN, JR., | ) | FILED: January 10, 2017 |
| | ) | |
| Appellant. | ) | |

Appeal from the Circuit Court of Cass County
The Honorable William B. Collins, Judge

Before Division One: Anthony Rex Gabbert, P.J., and Thomas H. Newton
and Alok Ahuja, JJ.

Following a jury trial in the Circuit Court of Cass County, Charles Baldwin was convicted of three class C felonies: stealing; tampering with the victim of a crime; and unlawful possession of a firearm.

Baldwin appeals, challenging his convictions for stealing and victim tampering. He argues that the evidence was insufficient to prove beyond a reasonable doubt that he was guilty of victim tampering. He also contends that the trial court erred in convicting him of *felony* stealing, in light of the Missouri Supreme Court's interpretation of the governing statute in *State v. Bazell*, 497 S.W.3d 263 (Mo. banc 2016).

We reject Baldwin's sufficiency challenge to the victim tampering conviction. We conclude, however, that under *Bazell* Baldwin's stealing offense constituted a class A misdemeanor, not a class C felony. The classification of the stealing charge

as a misdemeanor has the effect of also reducing the classification of Baldwin's victim-tampering offense from a felony to a misdemeanor. We accordingly reverse both convictions, and remand the case to the trial court with instructions to enter a judgment convicting Baldwin of the class A misdemeanors of stealing and victim tampering, and to resentence him accordingly.

## Factual Background

On Sunday, January 13, 2013, Ruby and Kevin Hobbs discovered that a Jimenez .380 caliber handgun had been stolen from their home in Pleasant Hill.[1] Ruby had purchased the handgun in December 2012 as a Christmas present for her husband Kevin. Ruby purchased the firearm in her own name because Kevin is a convicted felon, and therefore could not own or possess a firearm himself.

January 13, 2013, was the Hobbses' first wedding anniversary. Ruby and Kevin were away from home for much of the day attending church and visiting with friends. Ruby received a call from Baldwin that afternoon. Baldwin was in a romantic relationship with Nicole Hobbs, Kevin's daughter and Ruby's stepdaughter; Baldwin and Nicole were cohabiting and had a child together.

Baldwin asked Ruby what she and Kevin were doing, and whether they were at home. Ruby said that they were out, but would be home in a couple of hours; she told Baldwin that he was welcome to visit then. Baldwin declined, saying that he would come another time. Ruby testified that she was surprised to receive Baldwin's call, because he usually called Kevin, and had never called her directly in the past.

While Ruby and Kevin were away from home, their neighbor Mary Clevenger heard a vehicle coming down the road playing loud music. Clevenger looked out of her kitchen window and saw a dark-colored sport-utility vehicle pull into the

---

[1] Because Ruby, Kevin and Nicole Hobbs share the same surname, we refer to them by their first names in this opinion. We intend no familiarity or disrespect.

2

Hobbses' driveway. (Clevenger's description matched Baldwin's vehicle.) Clevenger saw a man exit the vehicle and walk up to the Hobbses' front door. After standing at the door for a moment the man walked around to the back of the house. At this point Clevenger stopped watching. She testified that she did not see or hear the man leave the property.

After returning home on January 13, Ruby and Kevin noticed that there were tire marks in the snow in their driveway, and footprints leading to the front door. They also discovered a footprint between the main and screen doors at the back of their house, and footprints on their back deck. The couple did not initially notice anything in their home to be out of order. Later, however, they realized that their .380 caliber Jimenez handgun was missing from the nightstand in their bedroom. Ruby called Baldwin to ask if he had been to the house. He said that he had not. Ruby then called the police to report what had happened, including the call from Baldwin earlier in the day.

Police arrested Baldwin in connection with the theft. Baldwin called Nicole from a holding cell after his arrest. The phone call was recorded and was admitted into evidence at trial. During the call Nicole stated that she did not know why Ruby and Kevin would suspect Baldwin. He responded: "because I did it, baby." Baldwin asked Nicole to tell Kevin that if he "dropped the charges," he would get his gun back. Baldwin continued: "And tell him if he doesn't drop the charges, he can kiss good-bye of ever seeing his grandson."

Ruby testified that, after Baldwin was released from jail, he returned the gun to her. He asked Ruby and Kevin to drop the charges, but Ruby responded that at that point it was out of their hands.

Baldwin testified at trial that he and Nicole were staying at the Hobbses' house the weekend when the gun went missing. According to Baldwin, he, Nicole and Kevin were using methamphetamine while Ruby was at work. Baldwin

3

testified that he hid the gun under the bathroom sink because it made him feel safer. He also testified that he and Nicole left the Hobbses' residence around noon on Sunday, January 13, but that he returned in the afternoon because Kevin asked him to. Baldwin testified that nobody answered at either the front or the back door when he returned, so he "took off" without entering the home. Baldwin denied removing the gun from the Hobbses' residence, but testified that, after he was released from jail, he told Kevin where he had hidden the gun.

Baldwin was charged with four class C felonies: second-degree burglary for entering the home of Ruby Hobbs to steal a firearm, in violation of § 569.170[2] (Count I); stealing a firearm owned by Ruby Hobbs, in violation of § 570.030 (Count II); tampering with Kevin Hobbs, a victim of burglary and stealing, in violation of § 575.270 (Count III)); and unlawful possession of a firearm by a convicted felon, in violation of § 571.070 (Count IV). Count III alleged that Baldwin had attempted to tamper with Kevin by instructing Nicole during their recorded jailhouse conversation to advise Kevin that if he dropped the charges he would get his gun back, but that if he did not, Kevin would not be allowed to see his grandson in the future. The information alleged that Baldwin was a persistent offender based on his convictions in September 2006 of unlawful use of a weapon and possession of a controlled substance with intent to distribute.

After a two-day trial, a jury found Baldwin guilty of stealing a firearm, tampering with a victim, and being a felon in possession of a handgun. The jury acquitted Baldwin of the burglary charge. The court sentenced him to five-year terms of imprisonment for each of the three convictions, with the sentences to run concurrently.

---

[2] Statutory citations refer to the 2000 edition of the Revised Statutes of Missouri, updated through the 2012 Cumulative Supplement.

4

Baldwin now appeals, challenging his convictions for stealing and victim tampering.

## Discussion

## I.

Baldwin's first Point contends that the State failed to present sufficient evidence to prove beyond a reasonable doubt that Kevin Hobbs was a victim of either burglary or stealing, and that Baldwin's conviction of victim tampering must accordingly be reversed.

> When reviewing a challenge to the sufficiency of the evidence, the standard of review is whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. The evidence and all reasonable inferences therefrom are viewed in the light most favorable to the verdict, disregarding any evidence and inferences contrary to the verdict. This is not an assessment of whether the Court believes that the evidence at trial established guilt beyond a reasonable doubt but rather a question of whether, in light of the evidence most favorable to the State, any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt.

*State v. Jones*, 479 S.W.3d 100, 105 (Mo. banc 2016) (citations and internal quotation marks omitted). To the extent Baldwin's sufficiency claim raises issues of statutory interpretation, we review such legal questions *de novo. State v. Meyers*, 333 S.W.3d 39, 46-47 (Mo. App. W.D. 2010).

The victim tampering statute, § 575.270.2, provides in relevant part:

> A person commits the crime of "victim tampering" if, with purpose to do so, he prevents or dissuades or attempts to prevent or dissuade any person who has been a victim of any crime or a person who is acting on behalf of any such victim from:
>
> (1)    Making any report of such victimization to any peace officer, or state, local or federal law enforcement officer, or prosecuting agency or to any judge;
>
> (2)    Causing a complaint, indictment or information to be sought and prosecuted or assisting in the prosecution thereof;
>
> (3)    Arresting or causing or seeking the arrest of any person in connection with such victimization.

5

In order to convict a defendant of victim tampering, the evidence must be sufficient for the jury to find "that the object of the tampering is 'a victim of any crime.'" *State v. Owens*, 270 S.W.3d 533, 537 (Mo. App. W.D. 2008). In *Owens*, the accused was charged with tampering with the victim of statutory sodomy. The jury acquitted the defendant of the underlying statutory sodomy charge, but nevertheless convicted him of victim tampering. *Id.* at 536. We held that the defendant's "conviction for attempted victim tampering cannot survive his acquittal for statutory sodomy," and reversed the victim-tampering conviction. *Id.* at 544.

Under *Owens*, Baldwin's victim-tampering conviction cannot be sustained on the basis that Kevin Hobbs was the victim of burglary, because the jury acquitted Baldwin of the burglary charge.

Baldwin argues that Kevin Hobbs could not be a "victim" of the stealing offense either. Baldwin emphasizes that Kevin was a convicted felon who could not lawfully own or possess the gun. According to Baldwin, Kevin could not be a victim of stealing if he had no legal right to own or possess the stolen item. We disagree.

"A person commits the crime of stealing if he or she appropriates property or services of another with the purpose to deprive him or her thereof, either without his or her consent or by means of deceit or coercion." § 570.030.1. Section 570.010(11) provides that the phrase "of another" includes "a possessory or proprietary interest" in property.

Missouri courts have repeatedly held that a stealing or larceny conviction can be supported by evidence that the defendant took property from someone who *possessed* it, even if the victim did not *own* or *hold legal title* to the stolen property.[3]

---

[3] *See, e.g., State v. Webb*, 400 S.W.2d 84, 86 (Mo. 1966); *State v. Nicoletti*, 125 S.W.2d 33, 36 (Mo. 1939); *State v. Flowers*, 278 S.W. 1040, 1043 (Mo. 1925); *State v. Brown*, 737 S.W.2d 496, 496-97 (Mo. App. E.D. 1987); *State v. Smith*, 684 S.W.2d 576, 579 (Mo. App. S.D. 1984); *State v. Hill*, 528 S.W.2d 798, 801 (Mo. App. 1975).

These cases use terms like "rightful possession,"[4] "lawful possession,"[5] and "lawful custody and control"[6] to describe the types of possessory interests which a victim must hold to support a stealing conviction. Baldwin seizes on the references to "lawful" or "rightful" possession in these cases, and argues that Kevin Hobbs could not be a "lawful" or "rightful" possessor of the handgun, when he was prohibited by law from owning or possessing it.

We are unpersuaded. First, the references to "rightful" or "lawful" possession have their genesis in decisions which predate the adoption of Missouri's Criminal Code in 1977. The Code for the first time expressly defined the phrase "of another." The definition enacted in 1977 provides that "a possessory . . . interest" is sufficient to support a stealing conviction, § 570.010(11); it does not require that the possessory interest be "rightful" or "lawful."

Second, the references to "rightful" or "lawful" possession in the cited cases are *dicta*. The issue in those cases was whether property could be stolen from someone who merely possessed it, but was not the property's owner; the decisions hold that possession of property, even without ownership, is sufficient to support a conviction of stealing or larceny. The outcome in none of those cases depended, however, on whether the possession was – or was not – "rightful" or "lawful."

When the necessity of "rightful" or "lawful" possession was actually at issue, the Eastern District of this Court held that Missouri law imposes no such requirement. In *State v. Jordan,* 404 S.W.3d 292 (Mo. App. E.D. 2012), the defendant was convicted of robbery for forcibly stealing illegal drugs. On appeal, he

---

[4]     *Webb*, 400 S.W.2d at 86 ("the ownership may be charged to be either in the one *rightfully in possession* or the actual owner" (emphasis added)); *Nicoletti*, 125 S.W.2d at 36 ("In a larceny indictment the ownership of the stolen property may be charged . . . in one who was *rightfully in possession* as special owner, as, for example, consignee, carrier, or the like" (emphasis added)).

[5]     *Brown*, 737 S.W.2d at 496-97.

[6]     *Smith*, 684 S.W.2d at 579; *Hill*, 528 S.W.2d at 801.

7

argued that "illegal drugs cannot support a conviction for robbery under Missouri law because stolen property must be lawfully possessed." *Id.* at 299 (internal quotation marks omitted). The Eastern District rejected this argument. *Id.* Citing §§ 570.010 and 570.030, the Court held that it was sufficient that the victim "had a possessory interest in the drugs"; "under Missouri law, illegal drugs can be 'forcibly stolen' to support a robbery conviction." *Id.* at 300; *see also State v. Doss*, 394 S.W.3d 486, 492 n. 8 (Mo. App. W.D. 2013) (*dictum*; noting that defendant's admission to stealing marijuana would have supported a robbery conviction).

As in *Jordan,* Kevin Hobbs had a sufficient possessory interest in the stolen handgun to make him a victim of the theft, even though he could not *lawfully* possess the firearm due to his prior felony conviction.

It is irrelevant that the stealing count in the information (Count II) charged Baldwin with stealing a firearm "which was owned by Ruby Hobbs . . . without the consent of Ruby Hobbs and with the purpose to deprive her thereof." Missouri law plainly contemplates that there may be multiple victims to a stealing offense: the property's owner or owners, but also those non-owners who are in possession of the property. The fact that the information alleged that Ruby was a victim of the theft, because of her ownership of the gun, is consistent with the conclusion that Kevin was *also* a victim, because he possessed the firearm.

Point I is denied.

## II.

Baldwin's second Point argues that the trial court erred in convicting him of the class C felony of stealing. According to Baldwin, the Missouri Supreme Court's decision in *State v. Bazell*, 497 S.W.3d 263 (Mo. banc 2016), requires that this offense be classified as a class A misdemeanor. We agree.

Section 570.030 provides in relevant part:

8

> 1.      A person commits the crime of stealing if he or she appropriates property or services of another with the purpose to deprive him or her thereof, either without his or her consent or by means of deceit or coercion.
>
>      . . .
>
> 3.      Notwithstanding any other provision of law, any offense in which the value of property or services is an element is a class C felony if:
>
>           . . .
>
>           (3)      The property appropriated consists of:
>
>                . . .
>
>                (d)      Any firearms.
>
>      . . .
>
> 10.      Any violation of this section for which no other penalty is specified in this section is a class A misdemeanor.

After Baldwin's trial and conviction, the Missouri Supreme Court interpreted these statutory provisions in *Bazell*. The defendant in *Bazell* was convicted of two separate counts of stealing firearms. As here, the trial court characterized the two stealing offenses as class C felonies in reliance on § 570.030.3(3)(d). On appeal, the Supreme Court held that the enhancement provisions in § 570.030.3 did not apply to the offense of stealing defined in § 570.030.1. The Court explained:

> the felony enhancement provision, by its own terms, only applies if the offense is one "in which the value of the property or services is an element." Stealing is defined in section 570.030.1 as "appropriat[ing] property or services of another with the purpose to deprive him or her thereof, either without his consent or by means of deceit or coercion." The value of the property or services appropriated is not an element of the offense of stealing.

497 S.W.3d at 266. The court concluded that stealing a firearm must be classified as a class A misdemeanor. *Id.* at 267.

In light of the Supreme Court's interpretation of § 570.030.3 in *Bazell*, Baldwin requests that his conviction for felony stealing be reversed, and that the case be remanded to the circuit court for entry of a conviction, and resentencing, for

misdemeanor stealing. The State concedes that Baldwin's stealing conviction is subject to the holding in *Bazell*, and agrees that this case should be remanded to the circuit court for entry of a judgment convicting him of a class A misdemeanor, and for resentencing accordingly.

Where the facts found by a jury fail to support conviction of a greater offense, but are sufficient to support a defendant's conviction of a lesser offense, we have the authority to order entry of a conviction of the lesser offense. *See, e.g., State v. Blair*, 443 S.W.3d 677, 684 (Mo. App. W.D. 2014). That relief is warranted in this case. In convicting Baldwin of felony stealing, the jury necessarily found that he had committed each of the elements of class A misdemeanor stealing (in addition to finding that the stolen property consisted of a firearm, a fact which is now legally irrelevant). Baldwin does not challenge the sufficiency of the evidence to support a conviction of class A misdemeanor stealing, and in fact invites entry of a misdemeanor conviction. *Bazell*, which was decided after Baldwin's trial, rejected the prevailing interpretation of the stealing statute. In these circumstances, entry of a conviction for the class A misdemeanor is justified.

Reversal of Baldwin's felony stealing conviction also affects his conviction of victim tampering. Baldwin was convicted of, and sentenced for, the class C felony of victim tampering. Under § 575.270.3, "victim tampering is a class C felony *if the original charge is a felony*. Otherwise, tampering with a witness or victim tampering is a class A misdemeanor." (Emphasis added.) As explained above, Kevin Hobbs was the victim of misdemeanor – not felony – stealing. Therefore, the victim-tampering offense is likewise a class A misdemeanor, and reversal of Baldwin's conviction of felony victim tampering is required. We direct the circuit court on remand to enter a conviction of, and resentence Baldwin for, class A misdemeanor victim tampering.

Point II is granted.

10

## Conclusion

We reverse the trial court's judgment convicting Baldwin of the class C felonies of stealing and victim tampering. We remand the case to the circuit court with instructions to enter a judgment convicting Baldwin of class A misdemeanor stealing and victim tampering, and to resentence Baldwin accordingly. Baldwin did not challenge his conviction for unlawful possession of a firearm in this appeal; nothing in our opinion affects Baldwin's conviction or sentence for that offense.

_____
Alok Ahuja, Judge

All concur.